# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

NORMAN L. MAYES, #287-515　　　　:

　　　Petitioner　　　　　　　　　　　:

v　　　　　　　　　　　　　　　　　:　　　Civil Action No. L-10-85

STATE OF MARYLAND　　　　　　　:

　　　Respondent　　　　　　　　　　:

o0o

## MEMORANDUM

Pending is Respondent's Answer to the Petition for Writ of Habeas Corpus. Paper No. 10. Petitioner has filed a Reply to the allegations raised concerning timeliness and exhaustion. Paper No. 14. The matter is now ripe for this Court's review. After review of the papers filed, the Court finds no need for an evidentiary hearing. See Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts and Local Rule 105.6 (D. Md. 2008); see also Fisher v. Lee, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).

### I.　　Background

Petitioner pled guilty to two counts of attempted first-degree murder and kidnapping on September 1, 1999, in the Circuit Court for Anne Arundel County, Maryland. Paper No. 10 at Ex. 1, p. 5. In exchange for his guilty plea, Petitioner was told a Motion for Modification of Sentence would be considered within five years of the date sentence was imposed, at which time the Court would consider suspending all but 50 years of Petitioner's life sentence. Id. at Ex. 3, pp. 7 - 8.

The court engaged in a colloquy with Petitioner to insure his plea was being given voluntarily. Id. at pp. 8 - 17. Following the colloquy, the State outlined the evidence it was

prepared to produce at trial through more than 60 witnesses. The events took place on November 5, 1997. As summarized by the State, the first victim, Evelyn Seto, was leaving her job at Northrop Grumman. As she approached her car in the parking lot, she was attacked by a man wearing a mask and carrying a gun. Ms. Seto was told to lie down or the assailant would kill her. Upon complying, Ms. Seto's hands were bound behind her back with duct tape, and she was forced into a small blue car. The assailant drove away, and removed his mask, allowing Ms. Seto to see his face for the rest of the time she was captive. Ms. Seto identified her assailant as Petitioner.

Petitioner punched Ms. Seto in the face three times and threatened to kill her, because she was struggling to escape. He stated, "don't make me kill you here. I don't care about the car, the car is stolen." Ms. Seto managed to get out of the car in front of a house located at 1305 River Road. Petitioner also got out of the car and shot Ms. Seto several times as she attempted to make her way up the driveway towards the house. Petitioner then left in the car, only to return moments later to shoot Ms. Seto again, twice. The homeowner, Ms. Phillips, came out to investigate the noise, observed Ms. Seto on the driveway, called 911, and observed the car return a third time. Phillips was prepared to testify that the driver exited the car and appeared to be looking for something, then left when another car drove down the street. Police responded to 1305 River Road and found Ms. Seto suffering from several gunshot wounds, her hands still bound with duct tape behind her back. When she was transported to the hospital for medical treatment it is discovered that she suffered 11 gunshot wounds, including entry and exit wounds.

The following day Jeffrey Morgan, a police officer with Anne Arundel County, stopped a van in the vicinity of 940 Elkridge Landing Road. Petitioner, the driver, exited the van and fired four shots at Morgan. Morgan returned fire and struck Petitioner, who attempted to drive away

but crashed. Once the van was disabled, Petitioner fled on foot escaping apprehension. Based on fingerprint evidence recovered from the stolen van, arrest and search warrants were issued for Petitioner, who resided in Baltimore County with his grandmother.

When Baltimore County and Anne Arundel County police attempted to gain entry into the house where Petitioner was residing, Petitioner told the officers he had a gun halting entry. A hostage negotiator was brought to the scene to attempt to talk Petitioner out of the house. Eventually Petitioner surrendered and a search warrant was executed. Two guns, a 38 caliber Smith and Wesson and a 380 caliber Davis semi-automatic weapon, were recovered from inside the house. Petitioner was transported to a hospital for treatment of his gunshot wounds.

Petitioner later waived his Miranda rights and acknowledged to police that he shot Ms. Seto and Officer Morgan. He explained to officers that he had been high at the time of the incident and was attempting to rob Ms. Seto. He stated that when she tried to get away he got scared and began shooting at her. With respect to Officer Morgan, Petitioner stated he fired the gun at him in an effort to effectuate his escape.

Forensic evidence included fingerprints as well as weapons confirmed to have been stolen from one of the vehicles stolen by Petitioner. In addition, there was evidence that on November 7, 1997, Petitioner showed the two weapons to a co-worker and told him he could not use the guns anymore due to the fact he had shot someone the night before. After Petitioner was arrested he made statements to a correctional officer at the detention center that he thought he would get 20 years for shooting the woman and that he had "only shot her six times." The correctional officer was prepared to testify at trial.

Three expert witnesses were also prepared to testify at trial. A fingerprint expert would have testified to the recovery of fingerprints in the car used to kidnap Ms. Seto as well as

3

fingerprints recovered from a bag found in the van. In addition to the fingerprints, the mask described by Ms. Seto was recovered from the same stolen car where Petitioner's fingerprints were found.

The second expert witness was Joseph Kopera, who was described by the state's attorney as "a renowned expert in tool mark firearms identification." Kopera would have testified that the 380 Davis caliber weapon which was recovered from Petitioner's residence was the gun, to the exclusion of all others in the world, used to shoot Ms. Seto. In addition to Kopera's identification of the gun, Ms. Seto was able to provide a description of the gun, and Petitioner confessed to using the gun to shoot her.

A third expert witness in hair and fiber analysis, Mr. Exline, was prepared to testify that a roll of duct tape found in the van and contained in the bag with Petitioner's fingerprints on it, was the same tape used to bind Ms. Seto's hands behind her back. In addition, there would have been eyewitness identification of Petitioner as the shooter by both Officer Morgan and Ms. Seto, had the case gone to trial.

On March 1, 2007, Joseph Kopera, the firearms expert scheduled to testify on behalf of the State, killed himself after it was discovered that he had falsified his credentials and training. Paper No. 1 at p. 5. Petitioner filed a Motion for a New Trial on November 9, 2007, citing as newly discovered evidence the fraudulent credentials of Mr. Kopera.[1] In his motion Petitioner alleged that he only agreed to plead guilty because he had been convinced that the State's firearms evidence was substantial and Kopera's testimony would lead to his conviction. He further asserted that Kopera was a "perjurer who suppressed impeachment evidence, and misled Petitioner with fraudulent evidence." Petitioner concluded that his guilty plea was not entered

---

[1] On September 13, 2007, a hearing on Petitioner's Motion for Modification of Sentence was held and the motion was denied.

knowingly and intelligently because he was not made aware of Kopera's false credentials. The motion for new trial was denied without a hearing on January 11, 2008. Paper No. 1 at p. 6.

Petitioner appealed the denial of the motion to the Court of Special Appeals of Maryland. The circuit court's denial of a new trial was affirmed because there was "no reason to believe that Mayes was done any injustice by the revelation of Kopera's fabricated credentials." Paper No. 1, p. 7. In the state's brief it was alleged that the ballistics tests were repeated producing the same results as Kopera's tests. Petitioner asserts that there were no repeat ballistics tests and that the decision denying a new trial is based on false evidence. A petition for writ of certiorari filed with the Maryland Court of Appeals was denied on September 14, 2009. A Motion for Reconsideration was denied by the Court of Appeals on December 11, 2009.

Petitioner also filed a post-conviction petition on July 9, 2008, raising 24 claims, including whether Kopera's false credentials unfairly influenced him to plead guilty. Paper No. 10 at Ex. 8, pp. 6—8. Petitioner claimed that counsel was ineffective for failing to discover that Kopera had falsified his credentials and that failing to disclose Kopera's fraud and using his potential testimony to secure Petitioner's plea was prosecutorial misconduct. Id. Petitioner concluded that the errors made his guilty plea involuntary. The circuit court denied post-conviction relief in a decision dated December 10, 2009, but permitted Petitioner to file a review of sentence by a three-judge panel. Id. at Ex. 8, p. 28.

The post-conviction court rejected Petitioner's claims regarding Kopera, primarily because the prosecution obtained another ballistics analysis confirming the results reached in Kopera's analysis. The court concluded that Petitioner had failed to show any prejudice resulting from the failure to disclose Kopera's falsified credentials and he had failed to show that he would have opted to change his plea if the disclosure had taken place. Id. at pp. 29 - 30. In

5

short, the post-conviction court concluded that Kopera's involvement in Petitioner's case did not materially alter the information relied upon by Petitioner in deciding to plead guilty.

On January 7, 2010, Petitioner filed an application for leave to appeal the post-conviction court's decision denying relief. Id. at Ex. 9. In his application for leave to appeal, Petitioner claimed the post-conviction court's determination that the repeat ballistics tests confirmed Kopera's results was incorrect, and he claimed had he had access only to the new results, he would not have pled guilty. The application for leave to appeal was still pending at the time Respondents answered this Petition for Writ of Habeas Corpus.

**II.    Allegations in this Court**

Petitioner alleges as error, the following:

1. Judge Mulford abused his discretion when he denied Petitioner's Motion for a New Trial filed pursuant to Maryland Rule 4-331(c) without a hearing;

2. The Court of Special Appeals allowed the State to violate Maryland Rule 8-502(b), causing Petitioner prejudice;

3. The Court of Special Appeals ruled against Petitioner based on false and misleading information provided in the State's brief; and

4. The Court of Appeals erred by not reviewing the clearly erroneous actions of both lower courts.

Paper No. 1 at p. 10.

He adds that he is raising a Brady[2] violation, claiming there was a knowing suppression of impeachment evidence by the State with respect to Kopera's fraudulent credentials. Id. at p. 25. Petitioner claims that Kopera, as a member of the prosecution team, violated Brady when he suppressed impeachment evidence about his lack of credentials. Id. at p. 26. Thus,

---

[2] Brady v. Maryland, 473 U.S. 667 (1985).

6

Petitioner claims, the Court of Special Appeals' view that there is no reason to believe or suspect that the State had any intention to suppress the information about Kopera's credentials misses the mark. Relying on Schneider v. Estelle, 552 F. 2d 593 (5th Cir. 1977), Petitioner asserts that a constitutional due-process claim is not defeated simply because the prosecutor is unaware of the wrongful conduct of a law enforcement agent involved in the case.

### III. Preliminary Matters

<u>Exhaustion of State Remedies</u>

Under <u>Rose v. Lundy</u>, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he must have exhausted each claim presented to the federal court by pursuing remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. See 28 U.S.C. §2254(b) and (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking <u>certiorari</u> to the Court of Appeals), and with other claims by way of a post-conviction petition, followed by seeking leave to appeal in the Court of Special Appeals.

To exhaust a claim through post-conviction proceedings, it must be raised in a petition filed in the Circuit Court and in an application for leave to appeal to the Court of Special Appeals. See Md. Crim. Proc. Code Ann. §7-109. If the Court of Special Appeals denies the application, there is no further review available and the claim is exhausted. See Md. Cts. & Jud. Proc. Code Ann., §12-202. If, however, the application is granted but relief on the merits of the claim is denied, the petitioner must file a petition for writ of certiorari to the Court of Appeals. See <u>Williams v. State</u>, 292 Md. 201, 210-11 (1981).

Respondents assert that Petitioner has not exhausted the claims raised in his post-conviction petition because an appeal of the decision denying relief is pending in the Maryland Court of Special Appeals. Paper No. 10 at Ex. 9. Petitioner argues that he has exhausted all claims raised in the instant petition since the pending appeal pertains to ineffective assistance of counsel claims which he does not raise here. Paper No. 14. He does not dispute that he did not appeal the Maryland Court of Special Appeals' denial of his <u>Brady</u> claim to the Maryland Court of Appeals. <u>Id.</u>

<u>Statute of Limitations</u>

Respondents also contend that the petition is time-barred pursuant to 28 U.S.C. §2244(d). Paper No. 10. They assert that the factual premise regarding Petitioner's claims regarding Kopera came to light on February 28, 2007, giving Petitioner until February 28, 2008, to file the instant petition under §2244(d)(1)(D). <u>Id.</u> Respondents state that Petitioner's Motion for New Trial did not toll the filing deadline as it is not a collateral proceeding within the meaning of §2244(d). In addition, they note Petitioner did not file a post-conviction petition until July 9, 2008, after the federal filing deadline of February 28, 2008, had passed.

In response to Respondents' assertions that his claims are time-barred, Petitioner states that the factual premise regarding Kopera came to light on March 8, 2007, when a press release was issued by the Maryland State Police.[3] Paper No. 14 at Ex. A. He asserts he complied with the one-year filing deadline because he filed a Motion for New Trial on November 9, 2007, eight months after discovering facts regarding Kopera's credentials. <u>Id.</u> at p. 3. The Court of Special Appeals affirmed the denial on May 29, 2009. Further review was declined by the Court of Appeals on September 14, 2009. Paper No. 1 at Ex. 28. The instant Petition was filed on

---

[3] This Court is inclined to use the March 8, 2007 date as the date the factual premise regarding Kopera came to light given Petitioner's limited means of discovering such information in prison.

8

January 12, 2010.  In essence, Petitioner asserts that the Motion for New Trial and the appellate review which followed, tolled the filing deadline under §2244(d).

If the Motion for New Trial tolls the filing deadline, the instant petition is timely filed. When the Motion for New Trial was filed on November 9, 2007, there were 121 days remaining until the filing deadline of March 8, 2008.  The final appeal of the motion was issued on September 14, 2009, and the instant petition was filed 121 days later on January 12, 2010.

In order to determine whether a Motion for New Trial tolls the filing deadline, this Court must look to the nature of the proceeding.  In <u>Walkowiak v. Haines</u>, 272 F. 3d 234 (4th Cir. 2001), the Fourth Circuit determined that a motion to reduce sentence was not a post-conviction proceeding or other collateral review that operates to toll the one year limitation under 28 U.S.C. §2244(d)(2), because it is not a separate and distinct proceeding from the criminal trial in which the legality of the original judgment is challenged.  <u>Id.</u> at 237.  "A post-conviction proceeding, often called a 'collateral proceeding,' brought under the Act is not an appeal of the judgment; rather, it is a collateral attack designed to address alleged constitutional, jurisdictional, or other fundamental violations that occurred at trial."  <u>Moseley v. State</u>, 378 Md. 548, 560, 836 A. 2d 678, 685 (2003), <u>citing</u> Md. Crim. Proc., Code Ann §7-102; <u>Maryland State Bar Ass'n v. Kerr</u>, 272 Md. 687, 689-90, 326 A.2d 180, 181 (1974) (explaining that a post-conviction proceeding in Maryland does not constitute a part of the original criminal cause, but is an independent and collateral civil inquiry into the validity of the conviction and sentence).

Maryland Rule 4-331(c) governs a motion for a new trial based on newly discovered evidence and requires the motion to be filed within one year after the date the court imposed sentence.  Petitioner's Motion for New Trial was not filed within the time limit set forth by the rule, but was considered nonetheless.  Petitioner's claims that his guilty plea was involuntary and

exculpatory evidence was kept from him are similar to those filed in post-conviction proceedings. Thus, this Court, out of an abundance of caution, deems the Petition timely filed.

**IV.    Standard of Review**

Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in our cases." Williams v. Taylor, 529 U.S. 362, 405 (2000).[4] Section 2254(d) also requires federal courts to give great deference to a state court's factual findings. See Lenz v. Washington, 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

---

[4] Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curium), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409-410; see also Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); Booth-el v. Nuth, 288 F.3d 571, 575 (4th Cir. 2002).

objectively unreasonable in light of the evidence presented in the state court proceeding. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Petitioner's claims regarding violations of Maryland Rules of Procedure are not federal claims reviewable under 28 U.S.C. §2254. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 503 U.S. 62, 67- 68 (1991). Given Petitioner's assertion that he is not raising an ineffective assistance of counsel claim, the only claim raised that presents a cognizable federal claim is Petitioner's Brady claim. Thus, relief is denied on claims regarding whether the state court complied with Maryland law in denying the Motion for New Trial.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). "The Brady rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." United States v. Bagley, 473 U.S. 667, 675 (1985). In order to prevail on a Brady claim, it must be established that the evidence at issue is both favorable to the defense and that the unavailability of the evidence calls into question the result of the trial. Id. at 678. The Supreme Court has made it clear that there is no distinction between exculpatory evidence and impeachment evidence in the context of a Brady analysis. See Giglio v. United States, 405 U.S. 150, 154 (1972). There is no requirement that the guilty finding must be overturned unless suppression of the impeachment evidence so limited the defense's ability to cross-examine an accusing witness that "its suppression undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678.

The Court of Special Appeals addressed Petitioner's Brady claim as follows:

11

> In the matter before us, the evidence about Kopera may have been favorable to Mayes in terms of the ballistic reports, but immediately upon learning the truth about Kopera, the State ordered the ballistics tests to be redone. Since the results were the same, we have no reason to believe that Mayes was done any injustice by the revelation of Kopera's fabricated credentials. Furthermore, we have no reason to believe or suspect that the State intentionally suppressed the information about Kopera's credentials. In fact, the truth about Kopera went unnoticed in the Maryland judicial system for over twenty years. Finally, even without the ballistics tests from Kopera, it is obvious that the State's case against Mayes was very strong. We are convinced that a finder of fact would not have produced a different verdict based on the newly discovered evidence regarding Kopera's credentials. We therefor find that the trial court properly exercised its discretion in denying Mayes a new trial.

Paper No. 1 at Ex. 7, p. 9.

Petitioner takes issue with the court's analysis because, in his view, the ballistics test conducted after Kopera's suicide did not produce the same results. Petitioner did not include in his Petition for Writ of Certiorari a challenge to the Court of Special Appeals' denial of the Brady claim. Thus, the claim is procedurally defaulted and may not be reviewed by this Court. In any event, it is not the role of this Court to revisit findings of fact made by the State court which are presumed correct. The interpretation of the facts by the Court of Special Appeals was not unreasonable in light of the evidence presented. Petitioner has failed to present a meritorious claim for federal habeas relief; therefore, the Petition shall be denied. In addition, because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. See 28 U.S.C. § 2253(c)(2).

October 26, 2010

/s/
_____
Benson Everett Legg
United States District Judge